UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**In re: 7045 Hanson Road, Hanson, Kentucky 42413**
**Hopkins County**

UNITED STATES OF AMERICA PLAINTIFF

VS. CASE NO. 4:19-CV-111-JHM

EMMA P. MCDONALD DEFENDANTS
7045 Hanson Road
Hanson, KY 42413
Serve by: Hopkins County Sheriff

UNKNOWN SPOUSE OF EMMA P. MCDONALD
7045 Hanson Road
Hanson, KY 42413
Serve by: Warning Order Attorney

COMMONWEALTH OF KENTUCKY
DIVISION OF UNEMPLOYMENT INSURANCE
c/o Andrew G. Beshear
Kentucky Attorney General
Kentucky State Capitol
700 Capitol Avenue, Suite 118
Frankfort, KY 40601
Serve by: Franklin County Sheriff

TOYOTA MOTOR CREDIT CORPORATION
C T Corporation System
306 West Main Street, Suite 512
Frankfort, KY 40601
Serve by: Franklin County Sheriff

**COMPLAINT**

* * * * * *

The Plaintiff, United States of America, states as follows for its cause of action against the Defendants, Emma P. McDonald ("Ms. McDonald"), Unknown Spouse of Emma P. McDonald ("Unknown Spouse"), Commonwealth of Kentucky, Division of Unemployment Insurance

("Division of Unemployment Insurance") and Toyota Motor Credit Corporation ("Toyota Motor Credit"):

1. This real estate foreclosure action is brought by the United States of America, on behalf of its Department of Agriculture, Rural Housing Service ("RHS") a/k/a Rural Development.

2. This Court has original jurisdiction of this action under 28 U.S.C. § 1345.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Ms. McDonald resides in this judicial district, because a substantial part of the events giving rise to this action occurred in this judicial district, and because the property at issue in this action is situated in this judicial district.

4. On or about October 1, 2010, Ms. McDonald, for value received, executed and delivered to RHS a promissory note ("the Note") in the principal amount of $83,747.00, bearing interest at the rate of 4.2500% per annum. The Note required monthly payments of principal and interest. A copy of the Note is attached hereto as Exhibit "A" and is hereby incorporated by reference as if set forth at length herein.

5. Contemporaneously with her execution of the Note, Ms. McDonald executed, acknowledged and delivered to RHS a real estate mortgage ("the Mortgage"), which was recorded on October 1, 2010, in Mortgage Book 999, Page 199, in the Commonwealth of Kentucky, Hopkins County Clerk's Office. In and by the Mortgage, Ms. McDonald granted to RHS a first mortgage lien against the therein-described real property ("the Property") located in Hopkins County, Kentucky. A copy of the Mortgage is attached hereto as Exhibit "B" and is hereby incorporated by reference as if set forth at length herein.

6. Contemporaneously with her execution of the Note and the Mortgage, Ms. McDonald executed and delivered to RHS a Subsidy Repayment Agreement ("the Subsidy

Agreement"). A copy of the Subsidy Agreement is attached hereto as Exhibit "C" and is hereby incorporated by reference as if set forth at length herein.

7. The Property consists of a tract of land located in Hopkins County, Kentucky, which is more particularly described as follows:

7045 Hanson Road
Hanson, Kentucky 42413

> Beginning at the southeast corner of the tract, said corner being on the West side of the right of way line of U.S. Highway #41; running thence North and with said right of way 123 feet; thence West to the L & N Railroad right of way; thence South with said Railroad right of way 102 feet to the Southwest corner of the original tract; thence with the original South line East to U.S. Highway #41, the point of beginning.
>
> Being the same real estate conveyed by Thomas Baldwin by deed dated October 1, 2010, and of record in Deed Book 694, Page 694, Hopkins County Court Clerk's Office.
>
> Parcel number: MAP-89-46

8. Ms. McDonald has failed and continues to fail to make payments of principal and interest due in accordance with the terms and conditions of the Note and the Mortgage, which are therefore in default.

9. Paragraph 22 of the Mortgage provides that if a default occurs in the performance or discharge of any obligation of the Mortgage, then the United States of America, acting through RHS, shall have the right to accelerate and declare the entire amount of all unpaid principal together with all accrued and accruing interest to be immediately due and payable and to bring an action to enforce the Mortgage, including foreclosure of the lien thereof. Because of the default by Ms. McDonald as set forth above, RHS caused a Notice of Acceleration of Indebtedness and Demand for Payment to be issued to Ms. McDonald declaring the entire indebtedness owed under

the Note and Mortgage to be immediately due and payable.  Ms. McDonald has failed to comply with said demand.

10.     Paragraph 1 of the Subsidy Agreement provides that a subsidy received in accordance with a loan under Section 502 of the Housing Act of 1949 is repayable to the government upon the disposition or non-occupancy of the security property.

11.     The Mortgage provides that upon any default thereunder RHS may recover its attorney's fees and costs incurred in the enforcement of the Note.

12.     The unpaid principal balance of the Note and the Mortgage is $80,278.82, with accrued interest of $23,322.03 through August 1, 2019, together with a total subsidy granted of $3,464.40, late charges in the amount of $374.62, and fees assessed of $29,064.34, for a total unpaid balance of $136,504.21 as of August 1, 2019, plus interest accruing on the unpaid principal balance at the rate of $12.3701 per day after August 1, 2019.  An Affidavit of Proof of Statement of Account signed by Rural Development foreclosure representative Kimberly Williamson is attached hereto as Exhibit "E" and is hereby incorporated by reference as if set forth at length herein.

13.     Whether Ms. McDonald is married or not is unknown to RHS.  If she is married, the Unknown Spouse may be vested with a spousal interest in the Property.  Any such spousal interest would be junior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, which is entitled to have the Property sold at a foreclosure sale free and clear of any interest this Defendant may claim thereto. The Unknown Spouse should come forth and assert any claim to or interest in the Property which he/she might have or forever be barred from doing so.

14.     Division of Unemployment Insurance may be claiming an interest in the Property by virtue of a Notice of Recoupment Lien, recorded February 4, 2014, in Encumbrance Book 103, Page 261 in the Hopkins County Clerk's office, and said Defendant should come forth and assert any claim to or interest in the Property it might have or forever be barred from doing so.

15.     Toyota Motor Credit may be claiming an interest in the Property by virtue of a Notice of Judgment Lien, recorded November 13, 2017, in Encumbrance Book 113, Page 244 in the Hopkins County Clerk's office, and said Defendant should come forth and assert any claim to or interest in the Property it might have or forever be barred from doing so.

16.     The Property is indivisible and cannot be divided without materially impairing its value or the value of RHS's mortgage lien thereon.

17.     The mortgage lien on the Property in favor of RHS is first, prior and superior to all other claims to, interests in and liens on the Property except for any liens which secure payment of ad valorem property taxes.

18.     There are no other individuals or entities known to RHS which purport to have a claim to, interest in or lien on the Property.

WHEREFORE, the United States of America, on behalf of RHS, demands as follows:

1.     That it be awarded a judgment against the interests of Ms. McDonald in the principal amount of $80,278.82, with accrued interest of $23,322.03 through August 1, 2019, together with a total subsidy granted of $3,464.40, late charges in the amount of $374.62, and fees assessed of $29,064.34, for a total unpaid balance of $136,504.21 as of August 1, 2019, until the date of entry of judgment, and interest thereafter accruing according to law, plus costs, disbursements, attorney's fees and expenses.

2. That RHS be adjudged to have a lien on the Property which is prior and superior to any and all other liens, claims, interests and demands, except for any liens for unpaid ad valorem property taxes; that the Property be sold free and clear of any and all claims to, interests in and liens on the Property held by all parties to this action except for real estate restrictions and easements of record and except for any liens which secure payment of city, state, county or school ad valorem taxes which may be due and payable at the time of sale; that the Property be sold free and clear of any right of redemption; and that the proceeds from the sale be first applied to the costs of this action, second to the debt, interest, costs and fees owed to RHS, with the balance remaining to be distributed to the parties as their claims, interests or liens may appear.

3. That the Property be adjudged indivisible and be sold as a whole.

4. That the Defendants named herein be required to answer and set up their respective claims to or interests in the Property or forever be barred from doing so, and that the foreclosure sale of the Property be free and clear of all such claims, interests and liens.

5. That it be awarded any other lawful relief to which it may be properly entitled.

Respectfully submitted,

MORGAN POTTINGER MCGARVEY


/s/ Charles J. Otten
Charles J. Otten (KBA #97524)
401 South Fourth Street, Suite 1200
Louisville, KY 40202
Telephone: 502-560-6720
Facsimile:  502-560-6820
Email: cjo@mpmfirm.com
ATTORNEY FOR PLAINTIFF,
UNITED STATES OF AMERICA

**THIS COMMUNICATION FROM A DEBT COLLECTOR IS
AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE**

M:\Cases\USDA\132232- McDonaldEmmaP\Pleadings\Complaint - Summons\Complaint.cjo.081419.docx

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❒ 1 U.S. Government Plaintiff
❒ 3 Federal Question *(U.S. Government Not a Party)*
❒ 2 U.S. Government Defendant
❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ❒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ❒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

**Other:**
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 485 Telephone Consumer Protection Act
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

❒ 1 Original Proceeding ❒ 2 Removed from State Court ❒ 3 Remanded from Appellate Court ❒ 4 Reinstated or Reopened ❒ 5 Transferred from Another District *(specify)* ❒ 6 Multidistrict Litigation - Transfer ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❒ Yes ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT "A"
## Promissory Note

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE

## PROMISSORY NOTE

OCT - 4 2010

SATISFIED

This ______ day of ________, 20 ______
United States of America
By: ______________________
Title: ______________________
USDA, Rural Housing Services

Type of Loan SECTION 502

Loan No. ______________

Date: 10/01 20 10

7045 Hanson Rd
(Property Address)

Hanson, Hopkins, KY
(City or Town) (County) (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 83,747.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of 4.2500 %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to ______________, ______ shall be added to the principal. The new principal and later accrued interest shall be payable in 396 regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $______________, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in 396 installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on November 1, 2010 and continuing for 395 months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on October 1, 2043, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 393.69. I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Account #

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account #

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166, or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

Emma P. McDonald Seal
Borrower Emma P. McDonald

_______________ Seal
Borrower

_______________ Seal
Borrower

_______________ Seal
Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10 )$ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

# EXHIBIT "B"
## Mortgage

BOOK 999 PAGE 199

[Space Above This Line For Recording Data]

Form RD 3550-14 KY
(Rev. 12-05)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on October 1, 2010 [Date]
The mortgagor is Emma P. McDonald, a single person ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| October 1, 2010 | $83,747.00 | October 1, 2043 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of Hopkins , State of Kentucky

which has the address of 7045 Hanson Road [Street] Hanson [City]
Kentucky 42413 [ZIP] ("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

**EMMA P. McDONALD**
**7045 HANSON ROAD**
**HANSON, KY 42413**

200

**MORTGAGE EXHIBIT A**

Beginning at the southeast corner of the tract, said corner being on the West side of the right of way line of U.S. Highway #41; running thence North and with said right of way 123 feet; thence West to the L & N Railroad right of way; thence South with said Railroad right of way 102 feet to the Southwest corner of the original tract; thence with the original South line East to U.S. Highway #41, the point of beginning.

Being the same real estate conveyed by Thomas Baldwin by deed dated October 1, 2010, and of record in Deed Book 694, page 694, Hopkins County Court Clerk's Office.

201

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

202

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market

203

value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:**

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

**25. Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

Emma P. McDonald [SEAL]
*(Borrower)*
Emma P. McDonald

______________________ [SEAL]
*(Borrower)*

STATE OF KENTUCKY }
COUNTY OF Hopkins } ss: **ACKNOWLEDGMENT**

205

Before me, Joe A. Evans III, a Notary Public in and for the County of Hopkins, personally appeared Emma P. McDonald who acknowledged that she executed the foregoing instrument on the 1st day of October, 2010 as her free act and deed.

WITNESS my hand and official seal this 1st day of October 2010.

[SEAL] [signature] Notary Public
Joe A. Evans III

My commission expires: 10/01/11

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

Joe A. Evans III [signature]
(Name)
1 S Main 3rd Floor, P O Box 695, Madisonville, KY 42431 (Signature)
(Address)

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY }
COUNTY OF Hopkins } ss:

I, Devra Steckler, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the 1 day of October, 2010, lodged for record at 3:30 o'clock P M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this 1 day of October, 2010.

Devra Steckler
Clerk of Hopkins County Court
By Don Ethridge, D.C.

2010011869
HOPKINS CO, KY FEE $29.00
PRESENTED / LODGED: 10-01-2010 01:50 PM
RECORDED: 10-01-2010
DEVRA STECKLER
CLERK
BY DONALD ETHRIDGE
DEEDS INDEXING
BK: MTG 999
PG: 199-205

# EXHIBIT "C"
## Subsidy Repayment Agreement

OCT - 4 2010

Form RD 3550-12
(Rev. 9-06)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0172

Account #

# SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but; payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Calculating Original Equity.

For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately furnished under the Self-Help program, an amended agreement using the market value definition for all other transactions as outlined below must be completed.

For all other transactions, the market value is the lower of the:

Sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable
OR
Appraised value as determined at the time of loan approval/obligation.

If the applicant owns the building site free and clear or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value will be the lower of the appraised value or the construction cost plus the value of the site.

Market value of property located at:
7045 Hanson Rd
Hanson, KY 42413-9576 — $ 82,500.00

Less Prior Liens — $ ______ Held by ______
$ ______ Held by ______

Less Subordinate Affordable Housing Products — $ ______ Held by ______
$ ______ Held by ______

Less Rural Development Single Family Housing Loans — $ 83,747.00
Equals Original Equity (If negative number use "0") — $ 0.00

Percent of Original Equity
(Determined by dividing original equity by the market value) — $ 0.00 %

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

5.

| months loan outstanding | Average interest rate paid 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

Current Market value

LESS

Original amount of prior liens and subordinate affordable housing products,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements (see 7 CFR part 3550).

EQUALS

Appreciation value. (If this is a positive value, continue.)

TIMES

Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS

Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower Emma P. McDonald (signature) Emma P. McDonald | Date 10-01-2010 |
|---|---|
| Borrower | Date 10-01-2010 |

# EXHIBIT “D”

## Affidavit of Proof of Statement of Account

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL DEVELOPMENT**

**AFFIDAVIT OF PROOF STATEMENT OF ACCOUNT AS TO:**

Borrower's Name(s): **Emma P. McDonald**
RD Loan Number(s):

**STATE OF MISSOURI**
**COUNTY OF ST LOUIS**

Personally appeared before me the undersigned authority**, Kimberly Williamson**, Foreclosure Representative, Rural Development (RD) who upon oath deposes and says that she is an employee of the United States Department of Agriculture, an agency of the United States of America, and further states as follows:

1. That affiant is the RD Officer charged with legal custody of the accelerated RD loan file.

2. That affiant has personally reviewed **Emma P. McDonald**, borrowers Rural Development's accelerated RD loan account and file, and according to the records maintained and kept in this office, the borrower(s) as of **August 1, 2019,** owe(s) the unpaid balance of **$136,504.21** which includes principal, interest accrued to date and other charges to the account as provided by the loan instruments and applicable law. Interest continues to accrue at the rate of **$12.3701** per day as provided by the loan instruments. The payment is due the **1st** of every month and is currently delinquent for **November 1, 2012** thru **August 9, 2019.**

3. The account is delinquent as of **August 1, 2019** in the amount of **$65,211.30.**

Breakdown of the unpaid balance:

| | |
|---|---|
| Loan Number | **38283623** |
| Principal Balance | $ 80,278.82 |
| Interest | $ 23,322.03 |
| Total Subsidy Granted | $ 3,464.40 |
| Escrow | $ |
| Late Charges | $ 374.62 |
| Fees Assessed | $ 29,064.34 |
| Escrow Credits | $ |
| **TOTAL** | **$136,504.21** |

Affiant has personal knowledge of the above-stated facts, is competent to testify to same, and declares that the foregoing is true and correct.

Kimberly Williamson, Foreclosure Representative
St. Louis, MO
Rural Development
United States Department of Agriculture

Sworn to and subscribed before me this 23rd day of July, 2019

**Kari C. Meyer**, Notary
Notary Public for Missouri
My Commission Expires: 02/24/2022

KARI C. MEYER
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 14398578
My Commission Expires Feb 24, 2022